UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, AS SUCCESOR IN INTEREST TO BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASOOCIATION, AS TRUSTEE FOR BEAR STEARNS COMMERCIAL MORTGAGE SECURITIES, INC. COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-TOP28 c/o C-III Asset Management LLC, 5221 N. O'Connor Boulevard, Suite 600, Irving, TX 75039, <br><br> Plaintiff, <br><br> v. <br><br> 50 DWIGHT, LLC <br><br> Defendant. | Civil Action No. 12cv-00769-ES-CLW <br><br> Civil Action |

_____

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SALE OF MORTGAGED PROPERTY PURSUANT TO N.J.S.A. 2A:50-31 AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO APPOINT A RENT RECEIVER**

_____

OF COUNSEL:

   Charles S. Lorber

ON THE BRIEF

   Stuart Gold (SG4041)

MANDELBAUM, SALSBURG, LAZRIS & DISCENZA, P.C.
155 Prospect Avenue
West Orange, NJ 07052
(973) 736-4600
Attorneys for Defendant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. ii

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS ............................................................... 2

ARGUMENT ................................................................................... 8

POINT I ...................................................................................... 8
THE COURT MAY ORDER THE IMMEDIATE SALE OF THE
MORTGAGED PROPERTY PURSUANT TO N.J.S.A. 2A:50-31 AT
THE REQUEST OF ANY PARTY AND HAS THE INHERENT
EQUITABLE AUTHORITY TO ADDRESS PLAINTIFF'S
CONCERN ABOUT A CREDIT BID

POINT II ..................................................................................... 11
THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION FOR
A RENT RECEIVER AS THERE IS NOTHING FOR A RECEIVER
TO MANAGE.

CONCLUSION ............................................................................... 12

**TABLE OF AUTHORITIES**

Page

CASES

<u>Graziano v. Grant,</u> 326 N.J.Super. 328, 342 (App.Div.1999).          9

<u>Sears Roebuck & Co. v. Camp</u>, 124 N. J. Eq. 403, 412 (E. & A. 1938)          10

<u>Valley National Bank v. Tru Med Properties, LLC</u>, 2011 WL 3176615          8
(App. Div. 2011)

STATUTES AND RULES

N.J.S.A. 2A:50-31          2, 8

N.J. Court R. 4:3-1          9

N.J. Court R. 4:64-1 et seq.          9

TREATISES

Pomeroy's Equity Jurisprudence § 109 (3rd Ed. 1905)          10

## PRELIMINARY STATEMENT

Defendant 50 Dwight LLC ("Dwight") submits this memorandum of law in reply to the papers submitted by plaintiff U. S. Bank National Association ("U.S. Bank") in opposition to Dwight's motion pursuant to N.J.S.A. 2A:50-31 to sell the property that is the subject matter of this foreclosure action, 50 Dwight Place, Fairfield, New Jersey (the "Property") and in opposition to plaintiff's cross-motion for a rent receiver.

Plaintiff has offered no bona fide reason for opposing an immediate sale of the Property pursuant to N.J.S.A. 2A:50-31.  Rather, its opposition papers only demonstrate that the only reason for plaintiff's refusal to allow an immediate sale is that it wants to keep Dwight and its principal, Michiel Schuit, responsible for ongoing payments of insurance and taxes while plaintiff contemplates how it wants to dispose of the Property when the economy improves.

## STATEMENT OF FACTS

Plaintiff has taken an inconsistent position with regard to the value of the Property in opposition to defendant's motion for a *pendente lite* sale pursuant to N.J.S.A. 2A:50-31 and in support of its cross-motion for the appointment of a rent receiver.[1]   In its opposition to the motion for a *pendente lite* sale, plaintiff claims that a *pendente lite* sale is unnecessary because the Property has sufficient value to support the loan. At page 2 of its brief in opposition to defendant's motion, plaintiff claims that its November 2011 appraisal of the Property shows a value of the $2.2 million. (Plaintiff has not attached the appraisal to its motion papers.)  During a June 19, 2012 conference with Judge Waldor, plaintiff's counsel claimed that the appraised value of the Property was in excess of $2.6 million, more than the total amount owed, including the $566,744.14 pre-payment penalty.  (We also note that plaintiff has not denied that the onerous pre-payment penalty has inflated the amount due on the loan so as to prevent either a market sale or a refinancing of the loan.)  [Schuit Dec. ¶ 3.]

While in opposition to the *pendente lite* sale motion, plaintiff claims to have plenty of value in the Property, in its cross-motion, plaintiff contends that it needs a receiver in order to protect the Property's value.  If the plaintiff believed that the property would have been worth $2.2 million, we do not understand why plaintiff refused defendant's prior $2 million offer. (To correct our initial brief, that proposal was made during a June 19, 2012 conference with Judge Waldor, not in April 2012.). If plaintiff was the successful bidder at a foreclosure sale and was then able to sell the Property at the alleged $2.2 million appraised value to a third party buyer, plaintiff would only receive at best a net of $2 million after carrying costs, transactional costs and commissions.  This is approximately the same amount plaintiff would have received if it

---

[1] The Statement of Facts is based on the accompanying Declaration of Michiel Schuit dated November 30, 2012, We note that plaintiff has not submitted any affidavit to support the factual contentions in its opposition papers.  We respond to these unsubstantiated factual assertions with a sworn statement from Mr. Schuit,

would have accepted the loan settlement offer of June 19, 2012. Clearly, plaintiff plays fast and loose with its contentions about the value of the Property.    [Schuit Dec. ¶ 4.]

Plaintiff states in its brief to have made various offers but plaintiff fails to mention that all these offers were made by its counsel subject to plaintiff's approval so there was never an offer from plaintiff that defendant could have accepted as binding.  As a matter of fact, when Judge Waldor requested that a representative 'with authority to make decisions' to be present at the settlement conference of June 19, 2012 plaintiff failed to appear even when it was given the opportunity to respond via a phone conference with the court. On June 29, 2012 in response to defendant's $2 million offer presented at that conference, plaintiff's counsel presented a counter offer of $2.16 million (plus interest cost for a total net loan payoff of $2,209,267 plus many other onerous terms not enumerated in plaintiff's brief) which was subject to approval by plaintiff's loan committee.  There is no doubt that had defendant accepted that proposal plaintiff would have backed away from the offer made by its counsel. [Schuit Dec. ¶ 5.]

Plaintiff's contention that it needs more time to evaluate the environmental issues at the Property is without basis.  Defendant has provided all the information it has regarding the environmental status of the Property, including the Response Action Outcome report and all supporting documents ("RAO") for the Property, in August 2012, immediately upon receiving this information from the tenant. (The RAO is the legislation required and industry-wide accepted 'evidence' that the environmental issues have been resolved.) Mr. Schuit met with plaintiff's environmental consultant then and gave him access to the Property and handed over the RAO. The consultant informed Mr. Schuit then that he had also requested from NJDEP a duplicate copy of the same RAO filed by tenant with the NJDEP in order to confirm the completeness of the documentations delivered by Mr. Schuit. Plaintiff has all the information

3

that is available on the environmental issue for over three months since the RAO was delivered and the consultant inspected the Property.  [Schuit Dec. ¶ 6.]

Plaintiff's contention that defendant has not supplied information regarding efforts to market the Property is without merit.  There have been no efforts to lease the Property because the Property cannot be leased while subject to foreclosure. As to the disclosure of the efforts to sell the Property, Mr. Schuit advised plaintiff that he had a buyer who was interested in the Property as a short sale.  Plaintiff rejected this offer which would have resulted in the recoupment of 100% of the outstanding principal of $1,951,967.57. Plaintiff has not addressed its reasons for rejection in its brief in opposition to defendant's motion and presumably plaintiff rejected the offer because it believes the Property is worth more (this further supports the statement above that plaintiff previously informed defendant that the Property was appraised in excess of $2.6 million). [Schuit Dec. ¶ 7.]

Plaintiff's assertion that appointing a receiver would relieve defendant and Mr. Schuit of any ongoing liability for taxes and insurance is also without merit.  Defendant was willing to consent to the appointment of a receiver provided that would put an end to ongoing liability for insurance and taxes.  Plaintiff refused.  Instead its counsel offered a fourteen page form of order which gave plaintiff everything that it wanted and provided no relief to defendant or to Mr. Schuit. The form of order is exactly the same form of order submitted in the cross-motion for the appointment of a receiver. On October 19, 2012 defendant's counsel responded in a letter to plaintiff explaining defendant's objections.  [Schuit Dec. ¶ 8,  Exhibit A.]

Plaintiff did not respond to defendant's objections when it filed its cross-motion for the appointment of a receiver on November 19, 2012 as the proposed order submitted with the cross-motion is virtually identical to the order sent to us in October.  We also note that the proposed

4

receiver, NAI Hansen identifies itself on its website as a partner of NAI Global, which is apparently a subsidiary of C-III Capital Partners LLC, plaintiff's servicing agent.  If the Court were to appoint a receiver, then it should appoint an independent fiduciary not one related to the plaintiff.  [Schuit Dec. ¶ 9.]

Plaintiff is correct that defendant will not consent to a judgment.  Defendant rejected that request out of a concern that both defendant and Mr. Schuit might be responsible for "phantom income" and may incur incremental tax liabilities if they consent to the entry of judgment.  However, there is nothing that defendant has done that prevented plaintiff from moving for summary judgment if it wanted to do so.  The fact that it has not is further proof that plaintiff is drawing out this proceeding in order to keep open Dwight's and Mr. Schuit's liability for insurance and taxes while it waits for a better economy in which to sell the Property.  [Schuit Dec. ¶ 10.]

Plaintiff claim that when defendant offered the 'keys to the property' in October 12, 2012 Mr. Schuit insisted upon a release of his obligations under the environmental indemnity is also without merit.  As plaintiff had left Mr. Schuit with no other option to remove the continuing liability for taxes and insurance (i.e. via loan settlement or short sale), Mr. Schuit offered a quitclaim deed without any monetary compensation and without requesting a release for possible claims under the environmental indemnity.  Plaintiff said that it would file a motion to void this deed which proceedings would have further delayed the transfer of the property to Plaintiff while the liability of taxes and insurance would keep accruing. [Schuit Dec. ¶ 11.]

As stated in defendant's initial motion, plaintiff's repeated refusal to take title to the Property is incomprehensible.  The very relief that plaintiff seeks is a sale of the Property.  Dwight is willing to give plaintiff that relief without any further litigation, yet plaintiff refuses.

5

Plaintiff does not need a foreclosure sale to resolve title issues as there are no junior liens or encumbrances on the Property. The environmental issues have been resolved. The proposed *pendente lite* sale pursuant to N.J.S.A. 2A:50-31 gives the plaintiff what it claims it is seeking. [Schuit Dec. ¶ 12.]

Defendant, however, has no objection to plaintiff's being allowed to credit bid the entire loan balance, including principal, interest, the prepayment penalty and its costs (which was $2.63 million as of February 2012). If a third party bidder is willing to pay more than that amount, the balance would go to defendant, but that is an unlikely outcome. The reality is that in most foreclosure sales and in particular in cases such as this where the balance is inflated as a result of the onerous prepayment penalty (29% of the outstanding principal), the secured party is the successful bidder. Defendant is not suggesting that plaintiff be required to bid or that it must bid the full amount of its mortgage debt.  If a third party bidder offers an amount less than the mortgage debt, plaintiff would be free to stop bidding and accept that amount.  As this is a non-recourse loan, with limited exceptions, defendant is not concerned with a deficiency claim. [Schuit Dec. ¶ 13.]

Plaintiff's contention that third party bidders would object to plaintiff's being allowed to credit bid is sheer speculation.  In most foreclosure sales, the mortgagee has a right to credit bid. It would not be a surprise to third parties if plaintiff were allowed to bid.  [Schuit Dec. ¶ 14.]

In short, plaintiff has not offered one valid objection to the proposed pendente lite sale pursuant to N.J.S.A. 2A:50-31. [Schuit Dec. ¶ 15.]

Plaintiff's cross-motion for the appointment of a receiver while it ruminates about moving towards final judgment and a foreclosure sale is yet further evidence that plaintiff is just delaying this proceeding in order to keep the costs of taxes and insurance on Dwight and Mr.

6

Schuit. There is nothing for a receiver to do.  There are no rents to collect as there is no tenant. There is no money to pay for taxes, insurance, utilities, maintenance or the proposed receiver's monthly fee. Assuming that the receiver could find a tenant, the $75,000 held in reserve by plaintiff (or what is left of it after plaintiff has taken its intended deductions) is not sufficient to pay for both tenant improvements and brokerage commissions. [Schuit Dec. ¶ 16.]

The *pendente lite* sale of the Property could be completed within 45 days of the entry of an order.  Plaintiff will most likely be the successful bidder and it can do whatever it wants in terms of leasing or selling the Property. This is faster and more economical than appointing a receiver to manage a tenantless property.  [Schuit Dec. ¶ 17.]

## ARGUMENT

### POINT I

**THE COURT MAY ORDER THE IMMEDIATE SALE OF THE MORTGAGED PROPERTY PURSUANT TO N.J.S.A. 2A:50-31 AT THE REQUEST OF ANY PARTY AND HAS THE INHERENT EQUITABLE AUTHORITY TO ADDRESS PLAINTIFF'S CONCERN ABOUT A CREDIT BID**

Plaintiff offers two erroneous legal arguments in opposition to defendant's motion for a *pendente lite* sale of the Property pursuant to N.J.S.A. 2A:50-31: (i) that the remedy is only available to the mortgagee and (ii) that the remedy does not allow plaintiff to credit bid its mortgage. The first argument is contrary to the plaint language of the statute. The second argument ignores both the statute and the Court's inherent equitable powers to fashion an appropriate remedy.

N.J.S.A. 2A:50-31 provides as follows:

When, in an action for the foreclosure or satisfaction of a mortgage covering real or personal property, or both, the property mortgaged is of such a character or so situated as **to make it liable to deteriorate in value or to make its care or preservation difficult or expensive pending the determination of the action**, the superior court may, before judgment, **upon the application of any party to the action, order a sale of the mortgaged property** to be made at public or private sale through a receiver, sheriff, or otherwise, **as the court may direct**. The proceeds of any such sale shall be brought into court, there to remain subject to the same liens and equities of the parties in interest as was the mortgaged property and to be disposed of as the court shall, by order or judgment, direct. [Emphasis added.]

The remedy is not limited to mortgagees. The legislature recognized that other parties in interest may want to accelerate the sale process in order to protect themselves which is why the statute says that **any party to the foreclosure action** may move for a *pendent lite* sale. As discussed in our initial brief, the case of <u>Valley National Bank v. Tru Med Properties, LLC</u>, 2011

WL 3176615 (App. Div. 2011) provides a clear example of the statute being used for the benefit of the mortgagor.  In that case the application for a *pendente lite* sale had been brought by one of the two members of the mortgagor, a limited liability company.  The member who had moved for that relief did so in order to maximize the value of the property, which benefited both the mortgagee and the two principals of the mortgagor as the *pendente lite* sale stopped the continued losses on a vacant building.  In case of Dwight, the Property's care or preservation is made difficult and expensive as 1) Dwight does not have the funds to maintain the Property and 2) Mr. Schuit's personal liability for taxes and insurance keep accruing while plaintiff delays its foreclosure action. Therefore, Dwight has standing to see relief under N.J.S.A. 2A:50-31.

Plaintiff's claim that the statute does not allow it to credit bid its mortgage both misconstrues the statute and ignores centuries of equity jurisprudence. As shown by the highlighted language above, the Court has the power to order the sale on such terms as  it "may direct."  Clearly, that statute permits this Court to determine the method of sale, including whether the mortgagee may credit bid.  (Defendant does not object to a credit bid.)

Even if the statute were silent on that point, this Court has the inherent equitable power to allow plaintiff to credit bid its mortgage.  A foreclosure sale is an equitable remedy, and, had this case been initiated in the Superior Court, plaintiff would have filed it in the Chancery Division of the Superior Court of New Jersey.  [See R. 4:3-1 and R. 4:64-1 et seq.]  The hallmark of equity is its ability to fashion remedies to fit any situation.  A "judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with principles of fairness, justice, and the law." Graziano v. Grant, 326 N.J.Super. 328, 342 (App.Div.1999).  As stated in the leading equity treatise:

> Equitable remedies [ . . .in contrast to legal remedies] are distinguished for their
> flexibility, their unlimited variety, their adaptability to circumstances and the

natural rules which govern their use.  There is in fact no limit to their variety in applications; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.

Pomeroy's Equity Jurisprudence § 109 (3rd Ed. 1905).  Thus "a lack of precedent or mere novelty in incident, is no obstacle to the award of equitable relief."  Sears Roebuck & Co. v. Camp, 124 N. J. Eq. 403, 412 (E. & A. 1938).

In short, the Court has the authority to allow plaintiff to credit bid its mortgage at the sale.  Plaintiff's concern that bidders will be deterred by a credit bid is just a makeweight.  In all foreclosure sales the mortgagee has the right, but not the obligation, to credit bid.

Based on forgoing, and as a matter of fairness and common sense, the Court should grant the application rather than allow the Property to linger in foreclosure.

**POINT II**

**THE COURT SHOULD DENY PLAINTIFF'S
CROSS-MOTION FOR A RENT RECEIVER
AS THERE IS NOTHING FOR A RECEIVER
TO MANAGE.**

Plaintiff's cross-motion for the appointment of a receiver while it ruminates about moving towards final judgment and a foreclosure sale should denied.  The cross-motion is yet further evidence that plaintiff is just delaying this proceeding in order to keep the costs of taxes and insurance on Dwight and Mr. Schuit. There is nothing for a receiver to do.  There are no rents to collect as there is no tenant.  There is no money to pay for taxes, insurance, utilities, maintenance or the proposed receiver's monthly fee. Assuming that the receiver could find a tenant, the $75,000 held in reserve by plaintiff (or what is left of it after plaintiff has taken its intended deductions) is not sufficient to pay for both tenant improvements and brokerage commissions.

The *pendente lite* sale of the Property could be completed within 45 days of the entry of an order.  Plaintiff will most likely be the successful bidder and it can do whatever it wants in terms of leasing or selling the Property. This is faster and more economical than appointing an independent receiver to manage a tenantless property.

**CONCLUSION**

For the reasons set forth above, the Court should grant defendant's motion for a foreclosure sale *pendente lite* pursuant to N.J.S.A. 2A:50-31 and deny plaintiff's cross-motion for the appointment of a rent receiver.

Mandelbaum, Salsburg, Lazris & Discenza, P.C.
Attorneys for defendant

                   /s/ Stuart Gold
By:_____
                   Stuart Gold

DATED:  December 3, 2012

12